Good morning, may it please the court. My name is Shelly Lattin. I represent the appellants. I would like to reserve five minutes for rebuttal. This case is about a city police officer towing the Miranda's vehicle from the driveway of their home after issuing a traffic citation. Even though the officer knew that the vehicle was in possession of the rightful owner and that it was both registered and insured. This tow served absolutely no legitimate government purpose and it was entirely unjustifiable. How about deterrence? Deterrence is not an issue here because the justification that the city has proposed for the warrant requirement of the fourth amendment. If this were a punishment, then deterrence might be a factor. But it's not intended as a punishment, it's intended as community care taking in the interest of public safety. Didn't the tow proceed before the infraction was final? There's an infraction notice for that. But they have a right to some hearing on that. The impoundment occurs immediately, right? The impoundment occurred immediately after the issuance of the citation, within about a half an hour. Did they have a right to challenge the citation? They did have a right to challenge the citation and in fact they did challenge the citation. But wasn't that hearing on the citation was at a later time after the impoundment? That was at a later time after the impoundment. I don't really, at least for myself, see how the impoundment could be viewed as a punishment. Because the city ordinance that permits the tow and the impoundment does not provide for any kind of standard procedures or standard criteria. It simply says that an officer may tow the vehicle when there is an unlicensed driver. In that case, in addition to the citation, the impoundment was essentially punitive. Wasn't it also for the purpose of safety to make sure that Mr. Miranda didn't go driving out in the street again? I mean the officer did notice that she was driving erratically, correct? The officer did notice that she was driving slowly and using her turn signal prior to the need to do it. However, there is nothing in the release requirements of the city ordinance that requires Mrs. Miranda to obtain a driver's license before the vehicle will be released to the owner. So it could happen again? It could happen again. Don't you think she might be deterred by the fact that she was cited and so was Mr. Miranda? Maybe it wouldn't be such a good idea to have it again. Because they were cited, yes. But the impoundment, in addition to the citation, is an impermissible punishment prior to the granting of a hearing. If that were intended as deterrence, if the same action, that would be punitive. I think my question to you earlier, or comment, maybe was ambiguous. I didn't see how it could be properly considered punitive before the infraction was final. In other words, I didn't think the city could justify impoundment as a punitive measure for deterrence. I agree. If this was before a hearing on the infraction, then maybe it was punitive if it's lack of discretion, but there's no evidence of that in the record, one way or the other, as to why the policeman did it. There's no testimony, I impounded it to punish them, right? No, there's no testimony. There's no standard in the ordinance? There's no standard in the ordinance. The hearing should be followed. The officer may impound upon evidence of a violation of driving without a license, or may not. There's no standard for when to do it. That's right. We agree with you that towing it before giving a hearing is what was improper. There should have been a hearing prior to the tow, if what the intent of the ordinance is, is to make an impoundment punitive. There's no evidence that that was the intent of the ordinance. I kind of doubt that was what the ordinance had in mind, what the city had in mind, but they might have had in mind the normal caretaking function, and sort of a bright line rule. We don't want, if people are driving without a license, their cars ought to be impounded so they won't continue it, or their car's not out in the middle of the street somewhere. Because then you have the wrinkle here that they're in a driveway. That's right, Your Honor, and that is a very large wrinkle. That's why this is a violation. In all of the community caretaking situations, the vehicle has either been impeding traffic, left on the side of a road, in an emergency lane, or otherwise jeopardized the public safety, or was likely to jeopardize the public safety. Here the vehicle was exactly where the police should want it to be, which is in the proper owner's driveway, who was licensed to drive, and both registered and insured, and there was no risk to the public safety whatsoever. So this can't be a valid exercise of the community caretaking function, because they weren't protecting anybody from anything. Well, the effect of the impoundment was that at least for 24 hours, Mrs. Miranda and Mr. Miranda did not drive that car. That is correct. However, they were able to retrieve the vehicle with no additional showing. They only had to show the same things as they had shown the police officer the night before, which is that Mr. Miranda owned the car, that he was licensed to drive, that it was insured, and that it was registered. So the next night he could have taken his wife out for another illegal spin at the wheel, I suppose, right? Theoretically, he could, yes. We were quite sure he wouldn't have. Why wouldn't he have? Did the fact of the car being impounded, might that have had some effect on him? Having to pay $185, lose a day of work? I believe that the citation would have served that purpose adequately. Of course, we don't have any evidence in the record as to what Mr. Miranda and Mrs. Miranda would have done under either of those circumstances. Perhaps the citation doesn't serve that purpose adequately, and that impoundment has a discretion unfettered of the policeman, might be more effective. Even if it were more effective, it would be contrary to both the U.S. Supreme Court's decision in Colorado v. Bertin and the Ninth Circuit decision in U.S. v. Penn, which require the police to have the standard policies which lay out standard criteria to guide the police officer in when to tow the vehicle and when not to tow the vehicle. And that is to, the purpose of that is to safeguard the public from an arbitrary decision, the unbridled discretion of a police officer may decide to tow my car but not another person's car for no obvious reason or for bad faith reasons. And the tow was so unreasonable under these circumstances. It was so completely unjustifiable. I think we have your argument. You may want to let the city sort of defend why it's doing it so we can zero in on what their rationale is. Right, and then reserve some time. I would like to reserve five minutes. You have the balance of your time. Okay, if you have no further questions regarding the Fourth Amendment argument, I would like to address the Fourteenth Amendment due process argument. Why don't you let the city tell us what their rationale is because we keep bouncing around between caretaker and punitive deterrence, which doesn't sound to me like a caretaker rationale. Certainly. So maybe we can narrow what we're talking about here. Thank you, Your Honor. And this is the last case on calendar, so we can play tennis with the argument if it actually is the fair way to go. Because we don't have anything else to do. May it please the court, counsel, I'm Gerald Warren on behalf of the city of Cornelius. And I think it's important to note that, first of all, this isn't a claim of discrimination or improper motive on behalf of the officer. The claim is that the Fourth Amendment was violated because the officer… That's an unreasonable seizure. Under the lawfully enacted ordinance and the state of law, the law in the state of Oregon that allows an impoundment for the protection of public safety. Under what? Under the caretaker? Yes, sir. Under what? I've read through a Supreme Court case that, and another case that lists, I think an Eighth Circuit or First Circuit case, listed all of the caretaker kind of cases, and I couldn't find one where the car was parked in the driveway with a lawful driver available to, and or a lawful driver around to take possession of the car. So can you tell me of any case under the Fourth Amendment analysis, and these all come up in the context of trying to suppress things that were found in the car after it was seized. I understand. So that's the Fourth Amendment context. But all of the caretaker cases that they cite for that proposition say custody was properly taken of the car. It was either abandoned on the road. It was, there was no licensed driver. The drivers who were there appeared intoxicated. Why doesn't this fall under the unreasonable seizure clause of the Fourth Amendment? Well, Judge Fischer, I think it doesn't because the Fourth Amendment recognizes that there are, I mean the exceptions to the Fourth Amendment, the caretaking function, recognizes that police have to encounter automobiles in a number of situations, and for the benefit of the public, they have the discretion to make a decision whether that seizure under those circumstances is appropriate. Right, but what's the rationale? That's why I say I look at all of the cases that are cited in support of that proposition and uphold it, and not one of them, nor does the rationale that it's articulated, come close to this case where the car is in the homeowner's driveway, and there's a lawful licensed driver who can move it if it had to be moved in any event. But it's, where else should it be? It's not threatening the public, is it? Well, it is a threat to the public in the same sense that they enacted that law authorizing the impoundment. That vehicle was utilized by both of them to violate the law. Okay, then it's part of the crime then, is that it? No, Your Honor. It's part of the officer not being convinced that the vehicle wasn't going to be operated in further violation by those two occupants, licensed operators of that vehicle, one of them licensed, in the manner that it had just been utilized. Then they can pick it up the next night and get the car and go out for a ride again. And the officer may arrest them again, Your Honor. But I'm having the same trouble that Judge Fischer's question seems to raise, that I don't really see a caretaking function in impounding a vehicle when it's in a driveway. I understand caretaking of city streets so a car is not left on the roadside where it's going to get into trouble or have damage to the car or damage to some individual. But when it's in the driveway of the Mirandas, I don't see what the caretaking purpose is to impound it. Well, that bothers me, and the other thing that bothers me about the case is the lack of a standard for when to impound and when not to. So it's true, this case is not a case where discrimination is alleged in the motive of the officer, but that whole idea of standards, one of the reasons for requiring standards, is sometimes said to be to avoid discrimination kind of in a systemic way. Well, I guess to address again the public safety reason, if the officer isn't convinced that the individuals in front of him understand that they're not to operate the vehicle in violation of the law, Mr. Miranda, what is in the record is his letter to the court, or to the municipal, I think he actually addresses it to the police liaison, but his record says she was only practicing, she did not commit a traffic violation. That apparently is his understanding is as long as she wasn't operating illegally, she could be out there practicing with the vehicle. The officer has a responsibility to protect the public, and as part of that is to impound the vehicle. But that letter wasn't available to the police officer when he made the decision to impound. No, Your Honor, it wasn't. I'm just saying. What was the basis upon which he made the decision to impound? That Oregon law authorized it, and his opinion was that public safety required it. But as to the rules question, what is the standard by which impound should be exercised by a police officer and not exercised? Well, Your Honor, I think it's similar to what the Supreme Court said in Atwater v. City of Lago Vista in the Fourth Amendment case that we cite there, where they arrest the individual for a seat belt violation. What is the standard that prohibited the officer or to apply in that situation where he seizes the person, which certainly under Fourth Amendment jurisprudence has typically been entitled to more protection than the seizure of a piece of property or a vehicle. And the court, in that Supreme Court opinion, said if we were to derive a rule exclusively to address the uncontested facts of this case, Atwater might well prevail. And I would agree in this case the Mirandas might well prevail if you fashioned a rule simply based upon the facts of this case. But as the court went on and said in Atwater, So what you're saying is you don't need a standard to tell a policeman when to arrest a person for not wearing a seat belt, and you don't need a standard to tell a policeman when to impound the car. The standard is discretionary with the officer based on the circumstances confronted. If they put on evidence that said it's an improper method, the way he arrived at his decision, then that would be before the court. But there's no evidence that there was any improper basis for his decision. His effort was to impose public safety and protect the public. It's a very interesting case. If the impoundment is sort of a sanction for the violation, then you'd think they would be able to have a hearing on the violation for the impoundment. If the impoundment is to protect against the risk that they're going to allegedly offend again, continue a course of conduct, then you'd think they wouldn't be able to just go get the car the next day. So this whole thing has me a bit puzzled, I must say. But, Your Honor, are you puzzled because there's a licensed driver there? Are you puzzled because it's in their driveway and you under those circumstances may not make the same decision that the officer did in the situation he confronted? And if that's the situation, then I just think that the court's decision in Atwater assists us in applying the Fourth Amendment under these circumstances, and you defer to the officer in the field who makes that decision to protect the public's safety. Unless they bring forward something that says he does that to everybody regardless of any circumstances, then there's no evidence of that. She was charged with a misdemeanor crime. Isn't that what the seat belt violation was? Oh, in Atwater? It was a misdemeanor, Your Honor. As this Mrs. Miranda could have been charged in this case. She could have been arrested herself. Is that what you're saying? Mrs. Miranda? Yes. Yes, Your Honor. Under Oregon law, she could have been arrested. So we could seize her under Fourth Amendment jurisprudence, but they're asking you to pass a rule under these facts where we couldn't take the vehicle and impound it for the public's safety. Well, that might be rational because you could seize her for committing a misdemeanor, but you can't take her car when it's in her driveway to protect the public, really, unless it has something to do with that she might drive it again. Well, except that... Really, part of what I'm puzzled with here is what guides the officer, and maybe you're saying by analogy to Atwater, there's no necessary standard. I know there's none in the ordinance, but you're saying there doesn't have to be a memo or training of the police saying this is our policy, here's when you ought to impound. You're saying that's not necessary. So in theory, if an officer were biased against people who have red hair, just for some irrational reason, and said, boy, any time I find someone driving without a license, if they have red hair, I'm impounding their car, and if anything else, no problem, the officer could do that and there'd be no remedy. Or are you saying there would be a remedy if you could prove that? I think there'd be a remedy at some point because the other side would discover in a civil lawsuit, the red hair victim of the towing, absolute rule of towing or something to that effect. So it would come out at some point that there's an improper basis for the decision, but there's no evidence of improper basis in this case. And, Your Honor, back to the difference in this case is that you're asking us to turn it over to a licensed driver who has just allowed the violation of Oregon law, sat next to the person who's driven the vehicle in a manner that endangers the public, and now you ask us to tell us that we're required to leave the vehicle in their hands when the officer's judgment on that occasion was that it shouldn't be. But if the officer's judgment is that it shouldn't be, but it's only going to be away for a day. Well, unfortunately, the officer doesn't get to decide what the law allows. I mean, the legislators and the city councilmen pass the ordinance that says how they get it back and what they have to do to prove that. But in enforcing his public duty to protect the public, at least he takes it away for 24 hours. Well, do you think the city of Cornelius would be well served if it considered this issue of when policemen ought to impound a car and have some sort of standard memo in a memo that was what the policymakers of the city thought was appropriate? Or do you think it should just be up to the officer to do whatever they think is best as long as it's not discriminatory? Well, much like the defendant in Atwater, Your Honor, I don't particularly like the facts. But on the other hand, I understand an officer in the field attempting to apply the law uses his best judgment. And I don't know that you can come up with training that hits every situation that they are likely to encounter. In this circumstance, I've run this fact situation. I represent police agencies all over the state. And I've run this fact situation by them all, everybody I encounter, because I'm a little troubled that they would tow it from the driveway. On the other hand, they all say, well, not all of them, but typically the answer is, well, obviously they didn't convince the officer it wasn't going to be misused again. Some would have towed it, some wouldn't have, and tried to explain it to them. And I think you had a problem here. We don't have expert testimony in the record as to what police and experts say. The citation to Mr. Miranda, the licensed driver, a moving violation for purposes of reporting to the Department of Motor Vehicles. You know, I don't know that, Your Honor. I think it's a Class B traffic infraction or something like that. I don't know. I might go to the issue of the terms. Yes, Your Honor. Okay. Anything else? Well, Your Honor, I don't know that I need to address the 14th Amendment. I think the law on the due process is that the city's constitutional safeguards were there. And Mr. Miranda apparently did request a hearing that we never received. But he did have a hearing before a municipal court. And as the record shows, there was no fine imposed. And so I'll leave it. Okay. Thank you. Your Honor, in response to the issue of Atwater, this is a case where an officer made a decision about whether to make an arrest or not make an arrest of the person who had violated the law. It is not an issue where the police officer had to make a decision about whether to seize the property once the arrest was made. That's the kind of discretion that an officer is expected to exercise in the field. Unlike this case where the property was seized as a result of unbridled discretion, where both the Supreme Court and the Ninth Circuit have said that the officer's discretion must be fettered, it must be exercised in the community caretaking function by standardized procedures and the standardized criteria. That's been said, but Atwater is the latest pronouncement by the Supreme Court. And that says when you're seizing the body of a person who's in a car, you may do so without violating the Fourth Amendment, without any of the concerns you've raised with respect to the car. And I'm having a little trouble now seeing why, given Atwater, a different standard would apply to the policeman's judgment in the field about whether or not to take custody of the car. Are you saying that, let me put it this way, do you agree that he could have arrested Mrs. Miranda and taken her into custody from the driveway of her house? Yes, I believe he could have made that decision. Without any, with no standards or anything, he could have made that judgment. So he could have made a judgment that she posed a threat or whatever to re-offending, and so he could have done that, but notwithstanding Atwater, we should say that he couldn't have made that same decision with respect to her car. That's right, because the function... We value property more than personal individuals. I know you don't, but that's a conundrum that's posed by the Atwater rubric when we're confronted with that case and supplied in the case of a piece of property. I don't think so. It's because if you look at the purpose behind the police's action, they're completely different for Fourth Amendment analysis. The police make decisions all the time about what kind of citation to impose, whether to arrest somebody, and that's an appropriate kind of decision to make under the circumstances, and police officers have to be free to do that. The community caretaking function, however, is an exception to the warrant requirement of the Fourth Amendment, and as an exception, that has to be analyzed in a way that ensures Fourth Amendment protections of the property with these standard procedures. So you're saying that normally police persons make arrests upon probable cause to arrest in their own discretion, choosing what offense to arrest for and whether to arrest someone or not, and they don't need a warrant to do that, but they do need a warrant normally to seize property, and so here the seizure of the car should be different or something like that. The question is if we rule for your client, and now the Supreme Court ponders the city's argument about Atwater, do they say we're right or wrong? I guess that's kind of what's difficult to assess here. I believe the Supreme Court says you're right. I do not believe that Atwater overturned or changed anything regarding the decision in Colorado v. Bertine because, as I already said, the function of the police officer in assessing probable cause is completely different from the function of the police officer in applying the community caretaking function for the protection of the public, and probable cause doesn't enter into the community caretaking function at any point. The officer doesn't need probable cause. What he needs is to have a reason to protect the property or the community by seizing that property, but probable cause is never an issue in exercising that function, and that's the distinction between Atwater and Colorado v. Bertine and the reason why the seizure has to be reasonable and the standard procedures in the state... Well, you have to have probable cause to believe that the car has been driven illegally, doesn't he? I mean, he's got to observe the car being driven illegally, just like he has to observe that Ms. Atwater didn't have a seatbelt on. So probable cause is an element of both of those for purposes of arrest and detainment of a person or property, right? It is probable. It does enter into a decision whether to arrest or only issue a citation. What is the purpose for a policeman arresting a woman who's not wearing a seatbelt? I mean, there are several purposes. It's a good question, and I think that there's, in fact... One can be that she wants to teach this lady a lesson so that she won't hit her head against the dashboard and become an emergency room burden to the community when she has permanent closed-head concussive damages, correct? Yes. And, as we've said, the police officer in this case could have made the decision to arrest Mrs. Miranda and provided those reasons for it, but not having arrested Mrs. Miranda, but only giving her the citation. At that point, the tow of the vehicle could only have been accomplished using this community caretaking purpose. And once we get to the community caretaking purpose as the reason for seizing the vehicle, there's a different analysis under Colorado versus routine. And I don't mean to be facetious, but if the city is concerned about reoffending or whatever, basically they can accomplish what they want to do by not only seizing and impounding the car, they can also take the offending driver into custody. So their reaction to the rule you're proposing could be simply to follow Atwater, take her into custody, and take the car into custody under the same dual analysis that Dave described. Therefore, they've maximized both deterrence  I don't think that that would be the result in that instant, because in Atwater, once the driver was arrested, the issue was what's going to happen to the vehicle. And then the switch happens to the community caretaking. But in the meanwhile, Mrs. Miranda is still going to the slammer for at least overnight, perhaps. So, hearing victory? And in that case, the vehicle still would have to have been left in the driveway. Yeah, that's fine, but she's in jail now in order to accomplish the objectives that the city wishes to accomplish. Instead of seizing the car, they seize the body of the person driving it. And I say that's not a facetious question. That seems to just illustrate who you are. It doesn't seem a sensible... I'm sorry? No, that's fine. Well, wouldn't you be in your position that the car still could, even if she was arrested for a misdemeanor, that the car can't be towed out of her driveway without a standard for doing that? Or are you saying if she had been arrested, then they could impound the car? Out of the driveway. If she had been arrested, they still could not have impounded the vehicle from her driveway. It still would have required the standards because it would still have been the community caretaking function. That's what I thought your analysis was. Any reason why they couldn't arrest both Mrs. Miranda and Mr. Miranda? I don't know if there is an ordinance that would have permitted the arrest of Mr. Miranda for permitting her to drive. I'm not aware of one. Well, you know, there's a famous criminal Miranda case that got the Supreme Court's attention. Maybe there will be a famous civil Miranda case as well if they get interested in whichever side we decide this one on. It's a very challenging case. Okay. Thank you, Your Honor. Thank you both. It is an interesting case and we appreciate the good argument on both sides. The case is submitted and we will...
judges: Fisher, Gould, Bea